UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.

BANK JULIUS BAER & CO., LTD.,

    Plaintiff,

vs.

MICHAEL BLANK and PAMELA
STEPHANY,

    Defendants.

_____/

04 JAN 23 PM 3: 38

CLERK U.S. DIST. CT.
S.D. OF FLA. - WPB

**CIV-MIDDLEBROOKS**

**MAGISTRATE JUDGE**
**JOHNSON**

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Bank Julius Baer & Co., Ltd. ("BJB"), sues Defendants, Michael Blank

("Blank") and Pamela Stephany ("Stephany") (collectively, the "Defendants"), and, as grounds

therefor, states as follows:

### PARTIES, JURISDICTION AND VENUE

1.    This is an action for injunctive relief and for damages.

2.    At all relevant times, BJB was and is a citizen of Switzerland.

3.    At all relevant times, Blank was and is a citizen of the State of Florida.

4.    At all relevant times, Stephany was and is a citizen of the State of Florida.

5.    Jurisdiction in this matter is proper pursuant to 12 U.S.C. §632, which provides

that United States District Courts shall have original jurisdiction over any matter in which a

corporation organized under the laws of the United States is a party, and which matter arises out

of transactions involving international or foreign financial operations.  Specifically, in the instant

case, the agreements executed by Blank and Stephany, as more fully described in this Verified



Complaint, were executed by Blank and Stephany with the federally chartered New York branch

of BJB. Pursuant to 12 U.S.C. §3102(b), the operations of BJB's New York branch are

conducted with the same rights and privileges as a national bank. This matter arises out of BJB's

foreign and international operations. Thus, both prongs of 12 U.S.C. §632 are satisfied.

6.     Jurisdiction is also proper pursuant to 28 U.S.C. § 1332, by virtue of the fact that

there is complete diversity of citizenship and the amount in controversy exceeds Seventy-Five

Thousand Dollars ($75,000), exclusive of interest and costs. Injunctive relief is sought pursuant

to Federal Rule of Civil Procedure 65(a).

7.     Venue is proper in this judicial district under 28 U.S.C. § 1391(a) as it is the

district in which Defendants are located and in which all of the conduct at issue occurred.

## FACTUAL ALLEGATIONS

8.     BJB is a Zurich-based financial institution with offices in many jurisdictions around

the world. BJB has a Representative Office in West Palm Beach, Florida (the "Palm Beach

Representative Office").

9.     For over 100 years, BJB has provided private banking services, asset management

and investment counseling for high net worth and institutional investors from around the world.

10.     On or about July 29, 1998, BJB and Blank executed an agreement relating to his

employment as Senior Representative in charge of the Palm Beach Representative Office (the

"Blank Agreement").   A copy of the Blank Agreement is attached hereto as Exhibit "A." The

Blank Agreement, at page 3, provides, in pertinent part,

> . . . any confidential information that you gather during your employment
> at the Bank (such as business data, trade secrets, client information, etc.)
> is the property of and of utmost importance to Bank Julius Baer. Irreparable
> harm would be done to our Group if such information were disclosed. You

therefore agree to treat this information in a confidential manner before, during and *after* your employment. (Emphasis added).

11.     The Blank Agreement, at page 3, also provides that Blank's employment with BJB was subject to the "Bank's General Employment Policies as summarized in the . . . Employee Handbook." Pursuant to the Employee Handbook, the relevant excerpts of which are attached hereto as Exhibit "B," at page 32, Blank agreed that

> The complete confidentiality of non-public corporate and client information, in whatever media, must be respected and safeguarded. This includes, but is not limited to, information regarding plans, costs, prices, client information, client lists and transactions of any type. Of course, no personal use may be made of any such information for the benefit of the employee or any third party . . . .

Additionally, at page 34 of the Employee Handbook, Blank agreed that

> [BJB's] clients or potential clients have the right to expect that the information they entrust to us will be handled with integrity and discretion . . . *These confidentiality obligations survive an employee's termination of employment.* (Emphasis added).

A copy of Blank's executed Receipt for Employee Handbook is attached hereto as Exhibit "C."

12.     Further, on July 14, 2003, Blank executed an Acknowledgment of Receipt and Acceptance of Terms of Baer-North America's Code of Conduct, a copy of which, along with the relevant excerpts of the Code of Conduct, are attached hereto as Exhibit "D." The Code of Conduct, at Sections 2.5 and 2.6, evidences Blank's agreement that he "would preserve, while employed and *after employment ends*, the confidentiality of [BJB]'s business information," including information regarding BJB's clients and their accounts. (Emphasis added).

13.     On or about July 8, 1998, BJB and Stephany executed an agreement relating to

3

Stephany's employment as an officer at the Palm Beach Representative Office (the "Stephany Agreement"). A copy of the Stephany Agreement is attached hereto as Exhibit "E." The Stephany Agreement, at page 3, provides, in pertinent part,

> . . . any confidential information that you gather during your employment at the Bank (such as business data, trade secrets, client information, etc.) is the property of and of utmost importance to Bank Julius Baer. Irreparable harm would be done to our Group if such information were disclosed. You therefore agree to treat this information in a confidential manner before, during and *after* your employment. (Emphasis added)

14. The Stephany Agreement, at page 3, also provides that Stephany's employment with BJB was subject to the "Bank's General Employment Policies as summarized in the . . . Employee Handbook." Pursuant to the Employee Handbook, at page 32, Stephany agreed that

> The complete confidentiality of non-public corporate and client information, in whatever media, must be respected and safeguarded. This includes, but is not limited to, information regarding plans, costs, prices, client information, client lists and transactions of any type. Of course, no personal use may be made of any such information for the benefit of the employee or any third party . . . .

15. Additionally, at page 34 of the Employee Handbook, Stephany agreed that

> [BJB's] clients or potential clients have the right to expect that the information they entrust to us will be handled with integrity and discretion . . . *These confidentiality obligations survive an employee's termination of employment.* (Emphasis added).

A copy of Stephany's executed Receipt for Employee Handbook is attached hereto as Exhibit "F."

16. Further, on July 14, 2003, Stephany executed an Acknowledgment of Receipt and Acceptance of Terms of Baer-North America's Code of Conduct, a copy of which is attached

hereto as Exhibit "G." The Code of Conduct, at Sections 2.5 and 2.6, evidences Stephany's

agreement that she "would preserve, while employed and *after employment ends*, the

confidentiality of [BJB]'s business information . . . ," including information regarding BJB's

clients and their accounts. (Emphasis added).

17.     By virtue of their employment with BJB, Blank and Stephany gained access to

valuable proprietary information of BJB, including, but not limited to, the identity of BJB's

clients, addresses, net worth, trust and estate information for BJB clients and their extended

family, clients' personal and family finances, tax information, personal and family insurance and

charitable donations.

18.     BJB's client lists and client information is a compilation of information not

available publicly and which is intended to give, and did give, BJB an opportunity to obtain a

competitive advantage over other competitors who do not know or have access to the client list

and additional client-related information.

19.     BJB took adequate measures under the circumstances to maintain the secrecy of its

client information, including by having its employees such as Blank and Stephany execute binding

agreements regarding the ownership and protection of BJB's confidential information.

20.     On or about January 1, 2004, Blank and Stephany left BJB's employ in order to

join another financial institution and to compete with BJB.

21.     When they left BJB, Blank and Stephany took with them BJB's confidential client

information, which are BJB's trade secrets subject to the protection of Florida law, and which

Blank and Stephany have been using and/or directing others to use in an effort to unfairly

compete with BJB, to divert business from BJB and otherwise damage BJB's business and

reputation.

22.     Specifically, and without limitation, Stephany, on behalf of herself and on behalf of Blank, with Blank's knowledge and consent, is using confidential client information wrongfully taken from BJB to contact BJB's clients and has been falsely representing to BJB's clients that the Palm Beach Representative Office is not being staffed, and that she is concerned about how the clients' funds are being managed and by whom.

23.     Additionally, Blank and Stephany and/or others acting at their direction have been using BJB's client information to contact BJB's clients to advise them that the entire staff of BJB's Palm Beach Representative Office had left BJB and joined a competing financial institution, and inviting BJB's clients to contact Blank and Stephany at their new office.

24.     Blank's and Stephany's use of BJB's confidential client information and other wrongful conduct has caused, and will continue to cause, confusion and concern amongst BJB's clientele, resulting in damage to BJB's business and reputation.

## COUNT I

## INJUNCTIVE RELIEF

25.     BJB re-alleges and incorporates the allegations of Paragraphs 1-24 of this Complaint as though more fully set forth herein, and alleges further:

26.     BJB seeks entry of an injunction prohibiting Blank and Stephany from violating each of their respective Agreements and from violating the Florida Trade Secrets Act.[1]

27.     In each of their respective Agreements, Blank and Stephany agreed to the

---

[1] While the Blank Agreement and the Stephany Agreement contain a clause requiring arbitration in connection with Blank's and Stephany's employment, BJB's claims do not arise out of Blank's or Stephany's employment. Rather, BJB's claims arise out of wrongful acts committed by Blank and Stephany outside of the scope of their employment, which wrongful acts continue to this day.

following provision:

> . . . any confidential information that you gather during your employment
> at the Bank (such as business data, trade secrets, client information, etc.)
> is the property of and of utmost importance to Bank Julius Baer. *Irreparable*
> *harm* would be done to our Group if such information were disclosed. You
> therefore agree to treat this information in a confidential manner before, during
> and *after* your employment. (Emphasis added)

28.     Additionally, in each of their respective Agreements, Blank and Stephany agreed

that their employment with BJB was subject to their compliance with BJB's "General

Employment Policies as summarized in the . . . Employee Handbook."

29.     Pursuant to the Employee Handbook, at page 32, Blank and Stephany agreed that

> The complete confidentiality of non-public corporate and client
> information, in whatever media, must be respected and safeguarded.
> This includes, but is not limited to, information regarding plans, costs,
> prices, client information, client lists and transactions of any type. Of
> course, no personal use may be made of any such information for the
> benefit of the employee or any third party . . . .

30.     Additionally, at page 34 of the Employee Handbook, Blank and Stephany agreed

that

> [BJB's] clients or potential clients have the right to expect that the
> information they entrust to us will be handled with integrity and
> discretion . . . *These confidentiality obligations survive an employee's*
> *termination of employment.* (Emphasis added).

31.     Finally, Blank and Stephany are each bound by BJB's Code of Conduct, pursuant

to which, at Sections 2.5 and 2.6, Blank and Stephany each agreed that he/she " . . . would

preserve, while employed and *after employment ends*, the confidentiality of [BJB]'s business

information . . . ," including information regarding BJB's clients and their accounts. (Emphasis

added).

7

32.     Accordingly, Blank and Stephany acknowledged and agreed that BJB's client information is confidential and proprietary and that they would not violate the proprietary nature or confidentiality of the client information, even after the termination of their employment with BJB.

33.     By virtue of the foregoing, BJB has demonstrated a likelihood of success on the merits of its claim that Blank and Stephany are wrongfully using BJB's client information.

34.     Additionally, by virtue of Blank's and Stephany's execution of their respective Agreements, BJB has demonstrated that "[i]rreparable harm would be done to [BJB] if [the confidential] information is disclosed," and that a balancing of the equities favors the issuance of an injunction against Blank and Stephany.

35.     As a direct result of Blank's and Stephany's wrongful conduct, BJB has suffered and will continue to suffer significant economic loss, the amount of which is unascertainable at this time.  Similarly, BJB's future economic loss as a result of Blank's and Stephany's continuing wrongful conduct is presently incalculable.

36.     Unless Blank and Stephany are enjoined from using BJB's client information and are ordered to return all of BJB's trade secrets and other valuable proprietary and confidential information, BJB will continue to be irreparably harmed.

37.     BJB does not have an adequate remedy at law.

38.     The granting of the injunctive relief sought herein does not contravene the public interest.  In fact, the public interest favors enforcement of unambiguous contracts.

WHEREFORE, BJB respectfully requests that the Court enter an Injunction:

a.          enjoining Blank and Stephany, directly or indirectly, whether alone or in

8

concert with others, until hearing and thereafter until further Order of this

Court, from using BJB's trade secrets, confidential client information or

other proprietary and confidential information obtained while Blank and/or

Stephany were employed with BJB or otherwise wrongfully obtained;

b.          ordering Blank and Stephany to return all of BJB's trade secrets,

confidential client information and other proprietary and confidential

information; and

c.          for such further relief as this Court deems just and proper.

## COUNT II

## BREACH OF CONTRACT (AS TO BLANK)

39.     BJB re-alleges and incorporates the allegations of Paragraphs 1-24 of this

Complaint as though more fully set forth herein, and alleges further:

40.     By virtue of the conduct more fully described in paragraphs 20-23 above, Blank

has breached and is continuing to breach the terms of his Agreement.

41.     As a direct and proximate result of Blank's breach of the Agreement, BJB has

been damaged in an amount to be determined at trial.

42.     All conditions precedent to maintaining this action have been performed, satisfied,

excused or waived.

WHEREFORE, BJB demands judgment against Blank for compensatory damages, plus

costs, and for such further relief as this Court deems just and proper.

## COUNT III

### BREACH OF CONTRACT (AS TO STEPHANY)

43.     BJB re-alleges and incorporates the allegations of Paragraphs 1-24 of this Complaint as though more fully set forth herein, and alleges further:

44.     By virtue of the conduct more fully described in paragraphs 20-23 above, Stephany has breached and is continuing to breach the terms of her Agreement.

45.     As a direct and proximate result of Stephany's breach of the Agreement, BJB has been damaged in an amount to be determined at trial.

46.     All conditions precedent to maintaining this action have been performed, satisfied, excused or waived.

WHEREFORE, BJB demands judgment against Stephany for compensatory damages, plus costs, and for such further relief as this Court deems just and proper.

## COUNT IV

### MISAPPROPRIATION OF TRADE SECRETS

47.     BJB re-alleges and incorporates the allegations of Paragraphs 1-24 of this Complaint as though more fully set forth herein, and alleges further:

48.     During Blank's and Stephany's employment with BJB, they were given and had access to BJB's trade secrets and/or confidential and proprietary information, including, but not limited to, client lists and the information necessary to service BJB's clients' needs, as more fully set forth in paragraph 17 above (the "Trade Secrets").

49.     During the period in which Blank and Stephany were given access to BJB's Trade Secrets, they knew or should have known that they were under a duty to maintain the secrecy

10

and/or limit the use of the Trade Secrets to that which benefited BJB, which duty was to continue after the termination of their employment with BJB.

50.     Blank and Stephany, in violation of Florida common law and the Florida Uniform Trade Secrets Act, Fla. Stat. Ann. § 688.001 et seq., have misappropriated BJB's Trade Secrets, for their own use and benefit.

51.     As a direct and proximate result of Blank's and Stephany's misappropriation and or unauthorized use of the Trade Secrets, BJB has been and will continue to be damaged in an amount to be proven at trial.

WHEREFORE, BJB demands judgment against Blank and Stephany for compensatory damages, plus attorneys' fees, costs, and for such further relief as this Court deems just and proper.

## COUNT V

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

52.     BJB re-alleges and incorporates the allegations of Paragraphs 1-24 of this Complaint as though more fully set forth herein, and alleges further:

53.     BJB has legitimate and protectable interests in its business relationships with its clients.

54.     At all relevant times, Blank and Stephany were aware that BJB had ongoing beneficial business relationships with its clients.

55.     Blank and Stephany, without a legal right to do so, have tortiously, intentionally and maliciously interfered with BJB's rights with regard its business relationships with its clients.

56.     As a direct and proximate result of Blank's and Stephany's tortious interference

with BJB's beneficial business relationships with its clients, BJB has suffered damages, including the loss of good will, in an amount to be proven at trial.

WHEREFORE, BJB demands judgment against Blank and Stephany for compensatory damages, plus costs, and for such further relief as this Court deems just and proper.

**COUNT VI**

**UNFAIR COMPETITION**

57.     BJB re-alleges and incorporates the allegations of Paragraphs 1-24 of this Complaint as though more fully set forth herein, and alleges further:

58.     Blank and Stephany, during the course of their employment by BJB, learned trade secrets, confidential information and other information relating to BJB and its clients.

59.     Blank and Stephany are engaged in unfair competition against BJB by wrongfully using such confidential information that was obtained, and was attainable by them solely through employment by, and association with BJB.

60.     As a direct and proximate result of the intentional and malicious actions of Blank and Stephany which constitutes unfair competition, BJB has suffered damages, including loss of good will and the value of its trade secrets and confidential and proprietary information, in an amount to be proven at trial.

WHEREFORE, BJB demands judgment against Blank and Stephany for compensatory damages, plus costs, and for such further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

BJB requests a trial by jury of all issues so triable.

**VERIFICATION**

I, Lars Ellermeier, V.P. of Private Banking at the New York Branch of Bank Julius Baer & Co., Ltd., do hereby verify that I have read the foregoing Complaint and further verify that the factual allegations set forth therein are true and correct.

_____
Lars Ellermeier

Dated: January 23, 2004

Respectfully submitted,

MOSCOWITZ MOSCOWITZ &
MAGOLNICK, P.A.
Mellon Financial Center
1111 Brickell Avenue, Suite 2050
Miami, Florida 33131
Telephone: (305) 379-8300
Facsimile: (305) 379-4404

By: _____
Jane W. Moscowitz
Florida Bar No.: 586498
Jmoscowitz@mmmpa.com
Joel S. Magolnick
Florida Bar No.: 776068
Jmagolnick@mmmpa.com

# EXHIBIT "A"



## BANK JULIUS BAER

### NEW YORK BRANCH

July 23, 1998

Mr. Michael Blank
Julius Baer Representative Office
Palm Beach, Florida

Dear Michael:

The reporting lines of the Palm Beach Office have been changed from the Zurich Head Office to the New York Branch. As a result, we are pleased to confirm your employment as the Senior Representative in charge of the Florida Representative Office of Bank Julius Baer & Co. Ltd. You will continue to be associated with Julius Baer Securities in the course of your duties. However, your employment is henceforth with the New York Branch of Bank Julius Baer (the "Bank") subject to the following terms and conditions:

Effective July 1, 1998, your compensation shall be composed of the following elements based on the fulfillment of your goals:

1- A base salary of $200,000 per year, payable bi-weekly.

2- A share of the gross revenues derived from your own referrals of private accounts, including additional contributions to existing accounts, calculated as follows:
           Year 1 - 40%
           Year 2 - 25%
           Year 3 - 10%

3- An additional override of 5% for years 1, 2 and 3 on the revenues of new business generated by other employees in our Florida office.

4- A commission of 0.10% on the first US$100 Mio. of assets brought in by the Florida Representative Office and of 0.05% on the assets brought in by the Florida Office over US$100 Mio. at year-end.

5- 20% of the management fee in Year 1 from the institutional accounts you may introduce and 10% of the management fee for the first year of any subsequent additional funding for the same institutional client(s).

Mr. Michael Blank
Page 2 of 5
July 23, 1998

The total amount derived from factors 2 through 5 less your base salary will be paid to you once a year as an annual bonus, after submission to the Zurich Board of Directors. The payout will occur at the same time as for any other employee of Bank Julius Baer.

Your goals – to be defined in detail by July 31,1998 - will be made of the following components:

> 1- Acquisition goals for the 1998 business year;
> 2- Management of the Representative Office;
> 3- Client retention;
> 4- Compliance with Bank policies and applicable laws and regulations and
> 5- Completion of training requirements.

These and future annual goals will be in writing and your performance reviewed on a quarterly basis by the Head of Private Banking, New York. Future bonus considerations will be based on your achievement of these goals.

As a senior executive of Bank Julius Baer you are covered by the Bank's insurance policies regarding causes of action related to your employment, provided you do not act illegally or with gross and willful negligence.

In addition all business expenses incurred in connection with the performance of your duties as Senior Representative in Florida shall be covered as per Bank Policies. You will coordinate your annual budget with the Head of Private Banking in New York and provide documented expense reports on a monthly basis. Memberships to professional associations and country clubs will be considered on a case by case basis.

Your functional title is Senior Representative Florida; we will also nominate you for the title of "First Vice President", subject to the Zurich Board of Directors' approval.

As the Head of our Representative Office, you have an important marketing role. However, you may not enter into any agreement or commitment with actual or potential clients or third parties on the Bank's behalf. You may not obligate or legally bind the Bank with respect to any third party. You may only propose business services or arrangements. The Bank shall be entitled at its absolute discretion to reject any client referred by you.

Mr. Michael Blank
Page 3 of 5
July 23, 1998

The Bank, in turn, will provide all necessary agreements, contracts, documentation, and marketing materials. All marketing initiatives (such as conferences, seminars, publications, etc.) have to be pre-approved by the Head of Private Banking in New York.

You shall carry out your activities as our Senior Representative in full compliance with all applicable laws and regulations. You shall take appropriate steps to obtain and maintain any and all governmental authorizations, approvals and licenses needed in connection with our Representative Office and your appointment as our Senior Representative in Florida.

At the same time, any confidential information that you gather during your employment at the Bank (such as business data, trade secrets, client information, etc.) is the property of and of utmost importance to Bank Julius Baer. Irreparable harm would be done to our Group if such information were disclosed. You therefore agree to treat this information in a confidential manner before, during and after your employment.

You are also eligible to participate in the Bank's Employee Benefits Program. We will be happy to provide you with any additional information or documents related to the benefits and your employment by the Bank, including copies of Benefit Plan documents and summaries. Please let the Human Resources Department know if you have any questions or would like additional information of any kind.

Your employment is likewise subject to the Bank's General Employment Policies as summarized in the enclosed Employee Handbook. Employment at the Bank is "at will", which means that you may elect to terminate your employment at any time for any reason and the Bank has the same right. The Bank further reserves the right to amend, modify or terminate any of its employment policies, employee benefit plans, or incentive compensation arrangements at any time and, thereby, to modify the terms and conditions of employment at any time.

In case of termination of your employment by the Bank, other than for cause, your base salary will cease to be paid as of the termination date; your various commissions listed above (first page of this letter) under #2 through #5 will survive your termination (other than for cause) in the following manner:

Mr. Michael Blank
Page 4 of 5
July 23, 1998

Share of gross revenues (#2 above), you will get payment over the course of six months following the month of your employment termination.

Override of 5% (#3 above), you will get payment over the course of six months following the month of your employment termination.

Commissions of 0.10% on the first US$100 Mio. and of 0.05% on assets over $100 Mio. (#4 above), you will get payment for the full year of your employment termination.

20% of management fee for institutional accounts (#5 above), you will get payment for the full year of your employment termination.

You agree to disclose the continuation of commission payments to your new employer. The Bank (except for benefits to which you would be entitled) shall owe no further obligations to you.

If you choose to leave the Bank, your salary and commissions will terminate as of the date you leave. In case of retirement or death (while you are still employed), your salary will cease to be paid as of the date of retirement or death, your commissions will continue for the remainder of the year in which these events take place. The Bank (except for benefits to which you would be entitled) shall owe no further obligations to you.

Your employment with Bank Julius Baer is subject to **binding arbitration** in accordance with the American Arbitration Association's Dispute Resolution Rules. These Rules are described in more detail in the Employee Handbook.

Please acknowledge your acceptance of these terms by signing and returning a copy of this letter to the Human Resources Department.

By signing below, you also agree to waive any past express or implied contract of employment, which might otherwise have arisen during your affiliation with the Group. Consequently, this letter, which does not constitute a contract of employment, supercedes any prior letters of employment or engagement and represents the full agreement between you and the Bank. It likewise supercedes any prior understandings or agreements regarding your employment - past and future - with Bank Julius Baer & Co. Ltd. or any affiliated company and represents the full understanding between the Bank and you.

Mr. Michael Blank
Page 5 of 5
July 23, 1998


We are delighted to have you continue with us as an on-going, valued member of our team.
We wish you every success in your career with Bank Julius Baer.


Sincerely yours,


_____
Barbara Hahn
First Vice President
Director, Human Resources

_____
Urs G. Schwytter
Senior Vice President
Head of Private Banking


I acknowledge receipt and agree.

_____          7-29-98
Michael Blank                            _____
                                         Date


Enclosure:
Employee Manual

# EXHIBIT "B"

# Julius Bär

# Employee Handbook

**Personal Responsibilities of Our Employees**

position with us, and may not accept from someone doing or seeking to do business with us a business opportunity not available to others or that is made available because of the employee's position with us.  Any actual or potential conflict of interest must be reported as indicated under "Reports, Approvals and Exceptions."  (See page 32)

| | |
|---|---|
| **Relationships with Clients and Suppliers** | Clients and suppliers will always be treated fairly and honestly. |
| **Performance of Duties** | In performing their duties employees should not make commitments that exceed their authority or otherwise fail to observe established procedures.  All transactions are to be accurately reported and recorded. |
| **Political Contributions** | Employees are encouraged to make political contributions to candidates and parties of their choice.  It is unlawful to make contributions or expenditures of any kind from company funds to political parties or candidates.  Payment of anything of value to a foreign official, foreign political party or candidate or any person where the company knows or has reason to know that the thing of value would be offered to any of the aforementioned parties or entities is prohibited. |
| **Confidential Information** | The complete confidentiality of non-public corporate and client information, in whatever media, must be respected and safeguarded.  This includes, but is not limited to, information regarding plans, costs, prices, client information, client lists and transactions of any type.  Of course, no personal use may be made of any such information for the benefit of the employee or any third party.  Employees will be asked to sign a statement of confidentiality at the time of hire and periodically throughout their employment to acknowledge their awareness of and reaffirm their commitment to this policy |
| **Reports, Approvals and Exceptions** | The law requires that all company employees report in writing any situation involving a conflict of interest or the offer or receipt of a gift or entertainment that is not permissible.

Exceptions may be made to this Policy when justified by unusual circumstances and consistent with the law.  However, any exceptions must be approved in writing by the Senior Management Committee and the Compliance Officer on the basis of a full written report of all relevant facts. |

32

**Policy Statement on Confidential Information, Personal Securities Trading and Related Issues**

BAER-North America has established this policy for the benefit and guidance of all employees. Careful adherence to the policy will protect BAER-North America and its employees from civil and criminal liability for violations of law. It will also protect our clients, who entrust us with confidential information, and enhance our reputation for fair dealing and acting in accordance with the highest ethical standards.

This statement is intended to amplify our policy prohibiting personal use of confidential information which is included in the *Policy on Personal Responsibilities of Employees:*

> "The complete confidentiality of non-public corporate and client information...must be respected and safeguarded...Of course, no personal use may be made of any such information for the benefit of the employee or any third party."

BAER-North America employees may always make personal investments, provided their transactions comply with all applicable laws, regulations and this policy.

It is expected that every BAER-North America employee will become familiar with and adhere to this policy and its related procedures. All requests for exceptions and all questions concerning interpretation of this policy should be addressed to the Head of the Legal and Compliance Department.

| | |
|---|---|
| **Confidentiality** | Our clients or potential clients have the right to expect that the information they entrust to us will be handled with integrity and discretion. All non-public information[1] received from our clients or potential clients is confidential and is not to be revealed except as may be required by law.

BAER-North America employees must safeguard non-public information received by all members of the Julius Baer Group. Future strategies, earnings projections, products, services, costs and the like must be kept strictly confidential.

These confidentiality obligations survive an employee's termination of employment. |
| **Insider Trading** | The law and this policy prohibit BAER-North America employees from purchasing or selling securities of any company about which the employee possesses material[2], non-public information. BAER-North America policies also prohibit such information from being communicated to anyone, even within. |

# EXHIBIT "C"

### RECEIPT FOR EMPLOYEE HANDBOOK

I acknowledge that I have received a copy of BAER-North America's Employee Handbook. I agree to read it thoroughly, familiarizing myself with its contents and adhering to all of the policies and procedures of BAER-North America, whether set forth in this Handbook or elsewhere. I agree that if there is any policy or provision in the Handbook that I do not understand I will seek clarification from the Human Resources Department. I understand BAER-North America is an "at will" employer and as such employment with BAER-North America is not for a fixed term or definite period and may be terminated at the will of either party, with or without prior notice. No supervisor or other representative of the Company except the General Manager or the Head of the Business Line and the Head of Human Resources has the authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the above. In addition, I understand that this Handbook states BAER-North America's policies and practices in effect on the date of publication. I understand that nothing contained in the Handbook may be construed as creating a promise of future benefits or a binding contract. Policies and procedures are continually evaluated and may be amended, modified or terminated at any time. I acknowledge and agree that any disputes, claims or controversies arising out my employment with BAER-North America are subject to <u>arbitration</u> as detailed in the handbook on page 28.

BLANK, MICHAEL      *Michella Blank*      6-19-03
_____    _____    _____
Print Name of Employee         Employee's Signature        Date

# EXHIBIT "D"



# Code of Conduct

## 2.5    Monitoring and Enforcing Confidentiality

**Human Resources shall provide each newly hired employee with a copy of the Code and obtain a signed and dated confirmation of receipt and acceptance of terms (see Attachment No. 1). Existing employees will receive a copy of the most recently updated Code every year and must sign and date a receipt and acceptance of its terms.**

**By signing and dating the receipt and acceptance form, an employee agrees:**

- **to preserve, while employed and after employment ends, the confidentiality of Baer-North America's business information unless directed, under very specific circumstances, to reveal such information**
- **to advise Baer-North America of suspicious transactions**
- **not to disclose individual or group computer/system password(s)**
- **to avoid other breaches of confidentiality**

## 2.6    Privacy Policy

1. Client accounts must be handled in a highly confidential manner. You may not:
   - Leave documents and other materials containing confidential information unattended,
   - Discuss the affairs of any client with anyone other than employees of the Baer Group who may legitimately require access to such information, or
   - Use a client's name when you are outside of the office or in a public space. The fact that a person is a client is itself confidential information.

2. No information or records concerning the affairs of Baer North America and/or its clients may be released except to persons legally entitled to receive such information. This includes confidential information requested during routine regulatory visits.  If you receive such a request, notify the Compliance Department immediately.

3. In General, sensitive or confidential information should only be communicated on a "need to know" basis. The following are guidelines for use in handling sensitive information:
   - Envelopes and packages containing sensitive information should be adequately secured. Sensitive information should be stored in a secure area under lock and key.

- Do not leave sensitive documents unattended in conference, copy, or fax rooms.
- Clients and others should not be left on the premises unattended.
- Be sure to properly dispose of all sensitive information so others cannot retrieve them from the trash.
- Do not discuss sensitive information while on cellular or cordless phones.
- Where practicable, do not leave doors open while discussing sensitive information.
- Do not remove sensitive documents from the office other than for legitimate business reasons and only unless they can be adequately secured.

# ATTACHMENT #1

## ACKNOWLEDGMENT OF RECEIPT AND ACCEPTANCE OF TERMS OF BAER-NORTH AMERICA'S CODE OF CONDUCT

**Part I (to be signed by all employees)**

As a condition of my employment, I agree to adhere to all provisions of Baer-North America's Code of Conduct, including, in particular:

1. I agree to give no unauthorized information relative to the accounts of Baer-North America or its relations with others, and to discuss no matters of a confidential nature relating to Baer-North America's affairs, unless such discussion is in the necessary course of Baer-North America's business and is in accordance with Baer-North America policy.

2. I agree to refrain from unauthorized use of confidential information and to avoid conflicts involving business opportunities that come to my attention as a result of my duties with Baer-North America.

3. I agree to treat all employees and applicants for employment, and all existing and prospective customers and suppliers, without discrimination or harassment based on race, color, religion, sex, national origin, age, veteran status, handicap, marital status, familial status or other personal characteristics.

4. I agree to obey all applicable laws and comply with all relevant regulations.

5. I agree to inform the officers of Baer-North America, without delay, of any fraud, false entry, substantial error, embezzlement and/or employee misconduct that I discover or know to have taken place in any records, property or funds of Baer-North America, and to report any transaction or matter that seems to be irregular or damaging to Baer-North America.

6. I agree that violation of this pledge of responsibility is a violation of Baer-North America's trust in me and will result in the appropriate disciplinary measures.

### Part I Signature and Acknowledgment

Employee's name (print) __BLANK, MICHAEL A.__

Employee's signature _Michael a Blank_          Date _7-14-03_

I:\word\conduct\bankjbr1.doc  rev. 6/03

***Part II (to be signed by Special Risk Staff)***

I acknowledge that, at the same time I received a copy of the Baer-North America Code of Conduct, I was notified of my status as "special risk staff." I further acknowledge, by signing this document in this place, that I understand the designation "special risk staff" (as set forth in Section 4.0 of the Code) and that, as a member of such staff:

1. I agree to provide the Chief Compliance Officer duplicate copies of confirmations of all securities trades that I make or authorize or that are made or authorized by my Family Members, plus the periodic broker statements showing these trades.

2. I agree to cause each of my Family Members to refrain from engaging, without prior Compliance Department approval, in any securities trades if the issuer is an existing client of the special risk areas or has been such a client in the preceding six (6) months.

3. I agree not to day trade (buy and sell the same security in the same trading day) in my accounts or in the accounts of Family Members except if taking a loss.

4. I agree to sign and deliver to Baer-North America annually a written statement acknowledging that I am familiar with the procedures set forth in Baer-North America's Operations Procedures Manual regarding insider trading and agreeing to adhere to them.

I further acknowledge that I have received and read and that I understand and agree to abide by the most recent memos from the Chief Compliance Officer concerning Special Risk Staff activities. These memos specifically include:

1. SUBJECT: Associated Persons' Brokerage Accounts

2. SUBJECT: Outside Business Activities

3. SUBJECT: Insider Trading

4. SUBJECT: Quarterly Transaction Reporting

## Part II Signature and Acknowledgment

Employee's name (print) *MICHAEL A BLANK*

Employee's signature *Michael A Blank*          Date *7-14-03*

I:\word\conduct\bankjbr\.doc  rev. 6/03

**EXHIBIT "E"**



# BANK JULIUS BAER

### NEW YORK BRANCH

June 29, 1998

Ms. Pamela Stephany
Julius Baer Representative Office
West Palm Beach, Florida

Dear Pamela:

The reporting lines of the Palm Beach Representative Office have been changed from the Zurich Head Office to the New York Branch.  As a result, we are pleased to confirm your employment as an officer in the Palm Beach Representative Office of Bank Julius Baer & Co. Ltd. However, your employment is henceforth with the New York Branch of Bank Julius Baer subject to the following terms and conditions:

$100,000 PS

Effective July 1, 1998, your base salary is ~~$125,000~~ per year, payable bi-weekly. You will be eligible for an annual bonus based on the fulfillment of your performance. Your goals – to be defined in detail by June 30, 1998 - are made of several components:

*LW*
*7/23/98*

1- Asset acquisition
You have already met with the head of your office, Mr. Michael Blank, to discuss and agree upon acquisition goals for the 1998 business year. Provided all other goals are reached, and after submission to the Zurich Board of Directors, you will get a share of the gross revenues (minus your gross salary) derived from your own referrals of private accounts calculated as follows:

Year 1 - 35%
Year 2 - 20%
Year 3 - 05%

2- Client retention;

3- Compliance with Bank policies, applicable laws and regulations, and

4- Completion of training requirements.

These and future annual goals will be in writing and your performance reviewed on a quarterly basis by Michael Blank. Future bonus considerations will be based on your achievement of these goals.

As an executive of Bank Julius Baer you are covered by the Bank's insurance policies regarding causes of action related to your employment, provided you do not act illegally or with gross and willful negligence.

Your functional title is Representative. We will also nominate you for the title of "Vice President", subject to the Zurich Board of Directors' approval.

As an employee of our Representative Office, you have an important marketing role. However, you may not enter into any agreement or commitment with actual or potential clients or third parties on the Bank's behalf. You may not obligate or legally bind the Bank with respect to any third party. You may only propose business services or arrangements, referring prospective clients to the New York Branch. The Bank, in turn, will provide all necessary agreements, contracts, documentation, and marketing materials. All marketing initiatives (such as trips, visits, conferences, seminars, publications, etc) have to be cleared with New York through Michael Blank who will coordinate.

At the same time, any confidential information that you gather during your employment at the Bank [such as business data, trade secrets, client information, etc.] is the property of and of utmost importance to Bank Julius Baer. Irreparable harm would be done to our Group if such information were disclosed. You therefore agree to treat this information in a confidential manner before, during and after you employment.

You are also eligible to participate in the Bank's Employee Benefits Program. We will be happy to provide you with any additional information or documents related to the benefits and your employment by the Bank, including copies of Benefit Plan documents and summaries. Please let the Human Resources Department or the undersigned know if you have any questions or would like additional information of any kind.

Your employment is likewise subject to the Bank's General Employment Policies as summarized in the enclosed Employee Handbook. Employment at the Bank is "at will", which means that you may elect to terminate your employment at any time for any reason and the Bank has the same right. The Bank further reserves the right to amend, modify or terminate any of its employment policies, employee

benefit plans, or incentive compensation arrangements at any time and, thereby, to modify the terms and conditions of employment at any time.

Your employment with Bank Julius Baer is subject to binding arbitration in accordance with the American Arbitration Association's Dispute Resolution Rules. These guidelines are also described in more detail in the Employee Handbook.

Please acknowledge your acceptance of these terms by signing and returning a copy of this letter to Barbara Hahn. By signing below, you also agree to waive any past express or implied contract of employment which might otherwise have arisen during your affiliation with the Group.   Consequently, this letter, which does not constitute a contract of employment, supercedes any prior letters of employment or engagement and represent the full agreement between you and the Bank.   It likewise supercedes any prior understandings or agreements regarding your employment - past and future - with Bank Julius Baer & Co. Ltd. or any affiliate company.

We are delighted to have you continue with us as an on-going, valued member of our team.  We wish you every success in your career with Bank Julius Baer.

Sincerely yours,

Barbara Hahn
First Vice President
Director, Human Resources

Urs G. Schwytter
Senior Vice President
Head of Private Banking

I acknowledge receipt and agree.

Pamela Stephany

Date 7/8/98

**EXHIBIT "F"**

## RECEIPT FOR EMPLOYEE HANDBOOK

I acknowledge that I have received a copy of BAER-North America's Employee Handbook. I agree to read it thoroughly, familiarizing myself with its contents and adhering to all of the policies and procedures of BAER-North America, whether set forth in this Handbook or elsewhere. I agree that if there is any policy or provision in the Handbook that I do not understand I will seek clarification from the Human Resources Department. I understand BAER-North America is an "at will" employer and as such employment with BAER-North America is not for a fixed term or definite period and may be terminated at the will of either party, with or without prior notice. No supervisor or other representative of the Company except the General Manager or the Head of the Business Line and the Head of Human Resources has the authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the above. In addition, I understand that this Handbook states BAER-North America's policies and practices in effect on the date of publication. I understand that nothing contained in the Handbook may be construed as creating a promise of future benefits or a binding contract. Policies and procedures are continually evaluated and may be amended, modified or terminated at any time. I acknowledge and agree that any disputes, claims or controversies arising out my employment with BAER-North America are subject to arbitration as detailed in the handbook on page 28.

| | | |
|---|---|---|
| STEPHANY, PAMELA | _Stephany_ | 6/23/03 |
| Print Name of Employee | Employee's Signature | Date |

**EXHIBIT "G"**

# ATTACHMENT #1

## ACKNOWLEDGMENT OF RECEIPT AND ACCEPTANCE OF TERMS OF BAER-NORTH AMERICA'S CODE OF CONDUCT

**Part I (to be signed by all employees)**

As a condition of my employment, I agree to adhere to all provisions of Baer-North America's Code of Conduct, including, in particular:

1. I agree to give no unauthorized information relative to the accounts of Baer-North America or its relations with others, and to discuss no matters of a confidential nature relating to Baer-North America's affairs, unless such discussion is in the necessary course of Baer-North America's business and is in accordance with Baer-North America policy.

2. I agree to refrain from unauthorized use of confidential information and to avoid conflicts involving business opportunities that come to my attention as a result of my duties with Baer-North America.

3. I agree to treat all employees and applicants for employment, and all existing and prospective customers and suppliers, without discrimination or harassment based on race, color, religion, sex, national origin, age, veteran status, handicap, marital status, familial status or other personal characteristics.

4. I agree to obey all applicable laws and comply with all relevant regulations.

5. I agree to inform the officers of Baer-North America, without delay, of any fraud, false entry, substantial error, embezzlement and/or employee misconduct that I discover or know to have taken place in any records, property or funds of Baer-North America, and to report any transaction or matter that seems to be irregular or damaging to Baer-North America.

6. I agree that violation of this pledge of responsibility is a violation of Baer-North America's trust in me and will result in the appropriate disciplinary measures.

### Part I Signature and Acknowledgment

Employee's name (print) ___STEPHANY, PAMELA___

Employee's signature ___Stephany___                        Date ___7/14/03___

I:\word\conduct\bankjbr1.doc  rev. 6/03

*Part II (to be signed by Special Risk Staff)*

I acknowledge that, at the same time I received a copy of the Baer-North America Code of Conduct, I was notified of my status as "special risk staff." I further acknowledge, by signing this document in this place, that I understand the designation "special risk staff" (as set forth in Section 4.0 of the Code) and that, as a member of such staff:

1. I agree to provide the Chief Compliance Officer duplicate copies of confirmations of all securities trades that I make or authorize or that are made or authorized by my Family Members, plus the periodic broker statements showing these trades.

2. I agree to cause each of my Family Members to refrain from engaging, without prior Compliance Department approval, in any securities trades if the issuer is an existing client of the special risk areas or has been such a client in the preceding six (6) months.

3. I agree not to day trade (buy and sell the same security in the same trading day) in my accounts or in the accounts of Family Members except if taking a loss.

4. I agree to sign and deliver to Baer-North America annually a written statement acknowledging that I am familiar with the procedures set forth in Baer-North America's Operations Procedures Manual regarding insider trading and agreeing to adhere to them.

I further acknowledge that I have received and read and that I understand and agree to abide by the most recent memos from the Chief Compliance Officer concerning Special Risk Staff activities. These memos specifically include:

1. SUBJECT: Associated Persons' Brokerage Accounts

2. SUBJECT: Outside Business Activities

3. SUBJECT: Insider Trading

4. SUBJECT: Quarterly Transaction Reporting

**Part II Signature and Acknowledgment**

Employee's name (print) ___PAMELA STEPHANY___

Employee's signature ___P Stephany___     Date ___7/14/03___

I:\word\conduct\bankjbr1 doc rev 6/03

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

BANK JULIUS BAER & CO., LTD

**DEFENDANTS**

MICHAEL BLANK
PAMELA STEPHANY

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ZURICH, SWITZERLAND
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

CIV-MIDDLEBROOKS

04-80063-CV-DMM/LRJ

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

MOSCOWITZ MOSCOWITZ & MAGOLNICK, PA
1111 BRICKELL AVENUE, SUITE 2050, MIAMI, FL 33131 (305)379-8300

ATTORNEYS (IF KNOWN)

MAGISTRATE JUDGE
JOHNSON

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: DADE, MONROE, BROWARD, ~~PALM BEACH~~, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | B☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | B☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | B☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | B☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | B☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | B☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **A LABOR** | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| B☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| B☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | B☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | A☐ 535 Death Penalty | | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | B☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | | A OR B |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | | | |
| | | B☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

BREACH OF CONTRACT AND THEFT OF TRADE SECRETS UNDER F.S.§688.001 et seq.

LENGTH OF TRIAL
via ___ days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $ ___

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions)

JUDGE ___                    DOCKET NUMBER ___

DATE 1/23/04

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 119764   AMOUNT ___   APPLYING IFP ___   JUDGE DMM   MAG. JUDGE LRJ